IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

RANDY KIDD,                          )
                                     )
              Plaintiff,             )
                                     )
        v.                           )          CV 115-207
                                     )
CAROLYN W. COLVIN, Acting            )
Commissioner of Social Security      )
Administration,                      )
                                     )
              Defendant.             )

_____

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
_____


Randy Kidd appeals the decision of the Acting Commissioner of Social Security denying

his application for Disability Insurance Benefits ("DIB") under the Social Security Act. Upon

consideration of the briefs submitted by both parties, the record evidence, and the relevant

statutory and case law, the Court **REPORTS** and **RECOMMENDS** the Commissioner's final

decision be **AFFIRMED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in

favor of the Commissioner.

## I.      BACKGROUND

Plaintiff applied for DIB in June of 2012, alleging a disability onset date of August 9,

2011. Tr. ("R."), pp. 117-18, 126. Plaintiff's last insured date for purposes of the DIB

application was December 31, 2016. R. 141. Plaintiff was fifty-two years old on his alleged

disability onset date. Plaintiff applied for benefits based on allegations of a back injury with

nerve damage, which causes constant left hip and leg pain. R. 35, 144. Plaintiff has a tenth grade education, and prior to his alleged disability, Plaintiff had accrued relevant work history as a tractor trailer truck driver. R. 41, 145.

The Social Security Administration denied Plaintiff's applications initially, R. 54, and on reconsideration, R. 77-78. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), R. 79-80, and the ALJ held a hearing on February 5, 2014. R. 26-45. At the hearing, the ALJ heard testimony from Plaintiff, who was represented by counsel, as well as from Mary Cornelius, a Vocational Expert ("VE"). Id. On May 9, 2014, the ALJ issued an unfavorable decision. R. 14-21.

Applying the sequential process required by 20 C.F.R. § 404.1520, the ALJ found:

1. The claimant has not engaged in substantial gainful activity since August 9, 2011, the alleged onset date (20 C.F.R. §§ 404.1571 *et seq.*).

2. The claimant has the following severe impairment: status post inter-body fusion at L4-5 and L5-S1 secondary to degenerative disc disease of the lumbar spine (20 C.F.R. § 404.1520(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526).

4. The claimant has the RFC to perform less than the full range of medium work as defined in 20 C.F.R. § 404.1567(c) with frequent climbing of ramps and stairs and frequent balancing.[1]  He can occasionally stoop, but never kneel, crouch, crawl, or climb ladders, ropes, and scaffolds. He is further restricted to avoiding concentrated exposure to machinery and heights. Thus, the claimant is unable to perform any past relevant work (20 C.F.R. § 404.1565).

---

[1]"Medium work" is defined as:

lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work. 20 C.F.R. § 404.1567(c).

5. Considering the claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the claimant can perform, including sandwich maker, laundry marker, and hand packer (20 C.F.R. §§ 404.1569 and 404.1569(a)). Therefore, the claimant has not been under a disability, as defined in the Social Security Act, from August 9, 2011, through May 9, 2014 (the date of the ALJ's decision) (20 C.F.R. § 404.1520(g)).

R. 16-21.

When the Appeals Council ("AC") denied Plaintiff's request for review, R. 1-3, the Commissioner's decision became "final" for the purpose of judicial review. 42 U.S.C. § 405(g). Plaintiff then filed this civil action requesting reversal or remand of that adverse decision. Plaintiff argues the Commissioner's decision is not supported by substantial evidence because the ALJ (1) failed to consider evidence indicating Plaintiff's severe impairment met or medically equaled Listing 1.04(A); and (2) erroneously determined Plaintiff has an RFC for medium work because he improperly evaluated the medical opinions of Dr. Daniel Boone, Plaintiff's treating physician, and Drs. Arthur Schiff and Robert Culpepper, two state agency non-examining physicians, as well as Plaintiff's credibility. See doc. no. 7 ("Pl.'s Br.") & doc. no. 14 ("Pl.'s Amend. Reply"). The Commissioner maintains the decision to deny Plaintiff benefits is supported by substantial evidence and should therefore be affirmed. See doc. no. 10 ("Comm'r's Br.") & doc. no. 15 ("Comm'r's Resp.").

## II.    STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, and (2) whether the Commissioner applied the correct legal standards. Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence,

or substitute its judgment for the Commissioner's. Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004). Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding judicial review of Commissioner's legal conclusions are not subject to substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

## III.    DISCUSSION

Plaintiff argues the ALJ failed to properly evaluate evidence that Plaintiff's severe impairment, namely his back injury, met or was medically equal to Listing 1.04(A).  See Pl.'s Br. & Pl.'s Reply.  Plaintiff also contends the ALJ did not properly weigh the medical opinions of Drs. Boone, Schiff, and Culpepper, and improperly weighed Plaintiff's credibility, resulting in a faulty conclusion Plaintiff retains the RFC to perform less than the full range of medium work.  See id.  As explained below, the ALJ considered evidence regarding Listing 1.04(A) and properly concluded Plaintiff's impairment did not meet or medically equal it.  Furthermore, the ALJ did not err in his evaluation of the medical opinion evidence or Plaintiff's credibility, and he thoroughly explained his rationale for determining Plaintiff has an RFC for medium work.  Therefore, none of Plaintiff's arguments form a valid basis for reversal or remand.

### A.    The ALJ Properly Evaluated the Evidence and Concluded Plaintiff's Severe Impairment Did Not Meet or Medically Equal Listing 1.04(A).

Plaintiff argues the ALJ improperly evaluated the evidence in his determination Plaintiff failed to meet Listing 1.04, and that finding was not supported by substantial evidence.  Pl. Br. pp. 13-16.  As discussed herein, the ALJ determination was supported by substantial evidence and Plaintiff's claim fails.

### 1.    Step Three Framework and Standard

If at step two of the evaluation process an ALJ finds a claimant has an impairment or combination of impairments that is "severe," then at step three the ALJ must determine whether that impairment or combination of impairments meets or medically equals the severity of a listed impairment in 20 C.F.R. Part 404, Subpart B, Appendix 1.  20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526.  "To 'meet' a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the

Listings and the duration requirement." Wilson v. Barnhart, 284 F.3d 1219, 1224 (11th Cir. 2002); see also 20 C.F.R. § 404.1525(a)-(d). Moreover, "to show that his impairment matches a listing, it must meet *all* of the specified medical criteria[;] [a]n impairment that manifests only some of those criteria, no matter how severely, does not qualify." Sullivan v. Zebley, 493 U.S. 521, 530 (1990) (emphasis in original).

An impairment "medically equals" a listing where "the medical findings are at least equal in severity and duration to the listed findings." 20 C.F.R. § 404.1526(a); see also Wilkinson o/b/o Wilkinson, 847 F.2d 660, 662 (11th Cir. 1987) ("In order to *equal* a listing, the medical findings must be at least equal in severity and duration to the listed findings.") (emphasis in original). Furthermore, "[a]ny medical findings in evidence [relating to medical equivalence] must be supported by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. 404.1526(b). A claimant cannot equal a listing by "showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." Zebley, 193 U.S. at 531.

The claimant bears the burden of producing medical evidence demonstrating his condition or conditions meet or equal a listed impairment. See Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003).

**2. The ALJ Properly Concluded Plaintiff's Severe Impairment Did Not Meet or Medically Equal Listing 1.04(A).**

At step two of the sequential evaluation process, the ALJ found Plaintiff had the severe impairment of status post inter-body fusion at L4-5 and L5-S1 secondary to degenerative disc disease of the lumbar spine. R. 16 However, at step three, the ALJ found "[t]he claimant's impairments do not meet or equal listing 1.04 for disorders of the spine [because] [t]here is no evidence of requisite nerve root compression, spinal arachnoiditis or lumbar spinal stenosis

resulting in inability to ambulate effectively." R. 17. Plaintiff argues the ALJ should have found

his lumbar degenerative disc disease met or equaled Listing 1.04(A). Pl. Br. 13-16.

Listing 1.04(A) requires:

> [a] [d]isorder . . . of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord [w]ith . . . [e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04.

Thus, to meet Listing 1.04(A), a claimant must have a spine disorder resulting in

"compromise of a nerve root or spinal cord" and show "evidence of nerve root compression"

satisfying the four criteria quoted above. Id. As the ALJ found, Plaintiff's medical record lacks

evidence of such compromise or compression. Early in his treatment, Plaintiff had nerve

impingement from hardware and nerve root displacement. R. 278, 412. However, Plaintiff

continually progressed to the point where his spine consistently showed no nerve compression

on imaging tests. R. 459, 489-90, 511. Without evidence of nerve root compression, Plaintiff

cannot establish he meets Listing 1.04(A).

Plaintiff has presented a detailed chart indicating evidence in the record of him meeting

or medically equaling Listing 1.04(A). Pl. Br. 14-15. Plaintiff's chart establishes only a handful

of abnormal findings scattered throughout the record, and fails to establish they are the rule

rather than the exception. Pl. Br. 14-15. Indeed, the record shows, on multiple occasions,

Plaintiff showed normal muscle strength with no atrophy, R. 345, 393, 399, 447, 499, 507, and

negative straight leg raising tests, R. 267, 326, 333, 449, 464, 511. Thus Plaintiff regularly failed

to meet the third—motor loss (atrophy with associated muscle weakness or muscle weakness)—

and the fourth— positive straight-leg raising test—criteria of Listing 1.04(A). "Because abnormal physical findings may be intermittent, their presence over a period of time must be established by a record of ongoing management and evaluation." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00(D); see also 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 1.00(H)(1) ("a longitudinal clinical record is generally important for the assessment of severity and expected duration of an impairment"). Because he failed to meet criteria three and four of Listing 1.04(A) on multiple occasions, Plaintiff cannot establish his abnormal findings "by a record of ongoing management and evaluation," and his intermittent symptoms are not "at least equal in severity and duration to the listed findings." Id.; Wilkinson, 847 F.2d at 662.

Plaintiff mentions in passing the ALJ "failed to even address Listing 1.04(A)." Pl. Br. p. 14. "While Appendix 1 must be considered in making a disability determination, it is not required that the Secretary mechanically recite the evidence leading to her determination. There may be an implied finding that a claimant does not meet a listing." Hutchison v. Bowen, 787 F.2d 1461, 1463 (11th Cir. 1986). Here, the ALJ made an express, albeit concise, finding Plaintiff did not meet Listing 1.04; he was not required to cite the evidence he considered to make that determination nor must he specify each subsection within Listing 1.04.

Also unavailing is Plaintiff's contention the ALJ should have obtained a consultative examination. If the evidence is insufficient to determine whether the claimant is disabled, then an ALJ "may ask [a claimant] to undergo a consultative examination . . . ." 20 C.F.R. § 404.1520b(c)(3). However, although he has a duty to develop the record fully and fairly, "the [ALJ] is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the [ALJ] to render a decision." Holladay v. Bowen, 848 F.2d 1206, 1210 (11th Cir. 1988) (quoting Ford v. Sec'y of Health & Human Servs., 659 F.2d 66,

69 (5th Cir. 1981)); <u>see also</u> <u>Wilson v. Apfel</u>, 179 F.3d 1276, 1278 (11th Cir. 1999) (ALJ not required to seek additional expert medical testimony to determine claimant's impairment was not severe where record was full and complete). As discussed above, the record contained ample evidence for the ALJ to make the determination Plaintiff did not meet or medically equal Listing 1.04 without obtaining an independent consulting examiner.

In sum, the ALJ's determination that Plaintiff did not meet or medically equal Listing 1.04 is supported by substantial evidence.

## B.      Step Four Framework for Formulating Plaintiff's RFC

At step four of the sequential process, the ALJ evaluates a claimant's RFC and ability to return to past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). RFC is defined in the regulations "as that which an individual is still able to do despite the limitations caused by his or her impairments." <u>Phillips v. Barnhart</u>, 357 F.3d 1232, 1238 (11th Cir. 2004) (citation omitted). Courts have described RFC as "a medical assessment of what the claimant can do in a work setting despite any mental, physical or environmental limitations caused by the claimant's impairments and related symptoms." <u>Watkins v. Comm'r of Soc. Sec.</u>, 457 F. App'x 868, 870 n.5 (11th Cir. 2012).

Limitations are divided into three categories: (1) exertional limitations that impact the ability to perform the strength demands of a job, i.e., sitting, standing, walking, lifting, carrying, pushing or pulling; (2) non-exertional limitations that impact the ability to meet non-strength job demands, i.e., tolerating dust and fumes, appropriately responding to supervision, co-workers and work pressure, and difficulty performing manipulative or postural functions of jobs; and (3) a combination of exertional and non-exertional limitations. <u>Baker v. Comm'r of Soc. Sec.</u>, 384 F. App'x 893, 894 (11th Cir. 2010) (citing 20 C.F.R. § 404.1569a(b)-(d)). When determining

whether a claimant can return to his past relevant work, the ALJ must consider "all the relevant medical and other evidence." <u>Phillips</u>, 357 F.3d at 1238.

In categorizing the physical exertion requirements of jobs, the Commissioner classifies jobs as sedentary, light, medium, heavy, and very heavy. 20 C.F.R § 404.1567. Here, the ALJ determined Plaintiff has the ability to perform less than the full range of medium work. "Medium work" is defined as work that involves "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work . . . he or she can also do sedentary and light work." 20 C.F.R. § 404.1567(c).

In determining at step four in the sequential process whether Plaintiff's RFC for a medium work would allow him to perform past relevant work, the ALJ consulted the VE in accordance with 20 C.F.R. § 404.1560(b)(2), which provides as follows: "A vocational expert or specialist may offer relevant evidence within his or her expertise or knowledge concerning the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy." The VE identified Plaintiff's past work as a tractor trailer truck driver as semiskilled, medium work. R. 41. The VE further opined a hypothetical individual with the Plaintiff's age, education, past job experience, and physical limitations could not perform Plaintiff's past relevant work, but identified sandwich maker, laundry marker, and hand packer as other work the hypothetical individual could perform and that exist in Georgia and the national economy. R. 41-42.

### C.     The ALJ Properly Weighed the Medical Opinions.

Plaintiff contends the ALJ improperly assigned little weight to the medical opinions of Dr. Boone, Plaintiff's treating general practitioner, and great weight to the opinions of Drs. Schiff and Culpepper, state agency non-examining physicians. As discussed herein, the ALJ

correctly weighed Dr. Boone's, Dr. Schiff's, and Dr. Culpepper's opinions in making his RFC determination and his evaluation of the medical opinions is supported by substantial evidence.

## 1.   Standard for Evaluating Medical Opinions

In the Eleventh Circuit, a treating physician's opinion must be given substantial weight. Hillsman v. Bowen, 804 F.2d 1179, 1181 (11th Cir. 1986). Refusal to give a treating physician's opinion substantial weight requires the Commissioner show good cause. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1159 (11th Cir. 2004); Schnorr v. Bowen, 816 F.2d 578, 581 (11th Cir. 1987). "The [Commissioner] must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986).

The Commissioner, however, is not obligated to agree with a medical opinion if the evidence tends toward a contrary conclusion. Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985). Indeed, a treating physician's opinion may be properly discounted if it is unsupported by objective medical evidence, is merely conclusory, or is inconsistent with the physician's medical records. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997); see also Crawford, 363 F.3d at 1159 (affirming ALJ's rejection of treating physician's opinion when such opinion conflicted with the doctor's treatment notes, was unsupported by the medical evidence, and was based primarily on claimant's subjective complaints); Phillips v. Barnhart, 357 F.3d 1232, 1241 (11th Cir. 2004) (affirming ALJ's rejection of treating physician's opinion when such opinion conflicted with the doctor's treatment notes and claimant's testimony regarding daily activities).

When considering how much weight to give a medical opinion, the ALJ must consider a number of factors:

(1) whether the doctor has examined the claimant; (2) the length, nature and extent of a treating doctor's relationship with the claimant; (3) the medical

11

evidence and explanation supporting the doctor's opinion; (4) how consistent the doctor's "opinion is with the record as a whole"; and (5) the doctor's specialization.

Forsyth v. Comm'r of Soc. Sec., 503 F. App'x 892, 893 (11th Cir. 2013) (citing 20 C.F.R. §§ 404.1527(c), 416.927(c)). Sources that can provide evidence to establish an impairment include licensed physicians, but not physician's assistants. See Farnsworth v. Soc. Sec. Admin., 636 F. App'x 776, 783-84 (11th Cir. 2016); 20 C.F.R. § 416.913(a)(1).

Additionally, the Commissioner's regulations require the opinions of examining physicians be given more weight than non-examining physicians, the opinions of treating physicians be given more weight than non-treating physicians, and the opinions of specialists (on issues within their areas of expertise) be given more weight than non-specialists. See 20 C.F.R. § 404.1527(c)(1)-(2), (5). However, SSR 96-6p provides that findings of fact made by state agency medical consultants regarding the nature and severity of an individual's impairments must be treated as expert opinion evidence of a non-examining source at the ALJ and AC levels of administrative review. SSR 96-6p, 1996 WL 374180, at *1 (July 2, 1996). Moreover, state agency medical consultants' opinions may be entitled to greater weight than the opinions of treating or examining sources if they are supported by evidence in the record. See id.; Jarett v. Comm'r of Soc. Sec., 422 F. App'x 869, 872-74 (11th Cir. 2011) (holding ALJ properly gave more weight to non-examining state consultants' opinions over treating physician's opinion); see also 20 C.F.R. § 404.1527(e)(2)(i), (iii).

Lastly, under SSR 96-5p, the determination of disability regarding a Social Security claim is reserved to the Commissioner, and treating and other medical source opinions on issues reserved to the Commissioner are never entitled to controlling weight or special significance. SSR 96-5p, 1996 WL 374183, at *1, 2 (July 2, 1996); see also 20 C.F.R. § 404.1527(d).

**2.** **The ALJ Properly Attributed Minimal Weight to Dr. Boone's Medical Opinion as Contrary to Objective Medical Evidence.**

Plaintiff claims the ALJ erred in discounting the medical opinions of Dr. Daniel Boone because treating physicians' opinions are generally given more weight. Pl. Br. p. 17. On January 27, 2014, Dr. Boone completed a Physical Capacity Evaluation Form in which he opined Plaintiff is limited to standing and walking less than two hours in an eight-hour workday; sitting less than six hours in an eight-hour workday; limited pushing and pulling in both upper and lower extremities; no stooping, kneeling, crouching, and crawling and occasionally climbing and balancing; limited reaching; and severely limited driving of automobile equipment. R. 151-16. The ALJ found this opinion inconsistent with Dr. Boone's own treatment notes, not supported by the independent Physical Work Performance Evaluation, and negated by the record as a whole. R. 19. Thus, the ALJ's decision to afford Dr. Boone's opinion little weight was supported by substantial evidence. See Lewis, 125 F.3d at 1440; Phillips, 357 F.3d at 1241.

Plaintiff argues that, contrary to the ALJ's finding, Dr. Boone's treatment notes do not indicate Plaintiff responded to treatment. Pl. Br. pp.17-18. However, although Dr. Boone's treatment notes show pain control and recovery were a work in progress, they also show Plaintiff's steady improvement. On September 24, 2012, Plaintiff reported back pain was a "major issue for him"; but by March 2013, he had a fifty percent pain reduction with new medication. R. 504, 506. During Plaintiff's April 2013 visit, Dr. Boone noted Plaintiff was "definitely better but not at goal yet. He is pleased." R. 501-02. And by July 2013, Plaintiff reported his pain was "under good control" and "doing well". R. 498-99. Therefore, Plaintiff did respond to treatment and the ALJ's determination that Dr. Boone's opinion contradicted his treatment notes was supported by substantial evidence.

Plaintiff further argues Dr. Boone's opinion is consistent with the findings of treating

surgeon Dr. Bundy and Dr. Williams.  Pl. Br. p. 18.  However, the ALJ also gave little weight to those opinions because they contradicted the results of the Physical Work Performance Evaluation conducted by occupational therapist Lana Hardeman.  R. 18.  In reality, however, the ALJ and Dr. Bundy actually agreed regarding Plaintiff's RFC because they both agreed with the findings of Ms. Hardeman.  See R. 447 ("Lumbar: Agree with FCE and WB disability . . . .").  In reference to Dr. Williams' opinion, the ALJ rejected it as contrary to "the findings of the Physical Work Performance Evaluation and the longitudinal record evidencing progressive improvement. . . ."  R. 19.

The ALJ relied heavily on the Physical Work Performance Evaluation conducted by Ms. Hardeman on December 27, 2012.  See R. 449-58.  This evaluation is the most thorough and detailed in the entire record and, by itself, constitutes substantial evidence supporting the little weight given to Dr. Williams.  During this thorough six-hour evaluation, conducted at the request of Dr. Bundy, Ms. Hardeman considered the formal consistency of the effort testing she conducted, Plaintiff's subjective pain statements, Plaintiff's body mechanics and movement patterns, and Plaintiff's medical history.  R. 453.  She also had Plaintiff engage in a series of tasks relevant to his ability to work and rated his performance on them.  R. 455, 457.  She charted her detailed findings in multiple places, comparing them to the requirements in the Dictionary of Occupational Titles.  R. 454-57.  Ms. Hardeman ultimately concluded Plaintiff could lift and carry up to forty pounds and sit, stand, and walk up to five and a half hours per day, and further opined "FCE results support return to active employment."  R. 456.  Although Dr. Bundy did not sign the evaluation, he did state unequivocally in treatment notes that he agreed with all of Ms. Hardeman's findings.  See R. 447.

An ALJ may use evidence from "other sources," including non-medical professionals, to

14

help determine the severity of a claimant's impairments and how they affect his ability to work. See 20 C.F.R. § 404.1513(a), (d); SSR 06-03p, 2006 WL 2329939. In considering a non-medical professional's opinion, an ALJ should consider factors such as "the nature and extent of the relationship between the source and the individual, the source's qualifications, the source's area of specialty or expertise, the degree to which the source presents relevant evidence to support his or her opinion, whether the opinion is consistent with other evidence, and any other factors that tend to support or refute the opinion." SSR 06-03P, at *5.

Here, the ALJ properly credited Ms. Hardeman's expert opinion reached after the most intensive physical evaluation of Plaintiff in the record. Indeed, the ALJ found her opinion the best reflection of postoperative improvement in the record. See R. 19.

Accordingly, the ALJ's determination that Dr. Boone's opinion was to be awarded little weight is supported by substantial evidence.

### 3. The ALJ Properly Attributed Great Weight to Drs. Schiff and Culpepper as Consistent with the Objective Medical Evidence

Plaintiff also claims the ALJ erred in attributing great weight to the opinions of Dr. Schiff and Dr. Culpepper, two state agency non-examining consultants. Both consultants opined Plaintiff could lift/carry fifty pounds occasionally and twenty-five pounds frequently and could stand/walk and sit for six hours in an eight-hour workday. R. 52, 63-64. Dr. Schiff specifically noted the medical records showed normal symmetric strength throughout, normal grip and pinch, volitional decreased lumbar motion and hip motion, and symptoms of weakness and numbness. R. 53. Dr. Culpepper noted no evidence of worsening since Dr. Schiff's review and affirmed the prior opinion. R. 63-64. The ALJ gave these two opinions great weight because they were "supported by evidence of postoperative improvement as best reflected by the Physical Work Performance Evaluation [discussed above]." R. 19. The ALJ's decision to afford Dr. Schiff's

and Dr. Culpepper's opinions great weight is thus supported by substantial evidence.

Plaintiff argues the ALJ should not have relied on the opinions of Dr. Schiff and Dr. Culpepper because they were outdated and did not consider all of the medical evidence, including Plaintiff's November 2012 CT scan, 2013 lumbar spine MRI, and 2013 EMG study. Pl. Br. p. 23. To support his claim, Plaintiff relies on Crowe v. Barnhart. Crowe v. Barnhart, No. 1:04-CV-1741-GET (N.D. Ga. Apr. 18, 2005), *report and recommendation adopted*, No. 1:04-CV-1741-GET (N.D. Ga. May 16, 2005) (holding substantial evidence did not support ALJ's RFC assessment relying "heavily" on opinion of state agency non-examining medical consultant where consultant did not review large amounts of Plaintiff's medical records). Here, unlike in Crowe, the ALJ did not base his finding primarily on Dr. Schiff's and Dr. Culpepper's review of the record, but rather considered the record as a whole, including the additional evidence received since their opinions. R. 17-19. Therefore, the ALJ appropriately accorded their opinions great weight in light of their consistency with the totality of the medical evidence. See Blakley v. Comm'r Of Soc. Sec., 581 F.3d 399, 408-09 (6th Cir. 2009) (holding ALJ's decision to accord greater weight to state agency physicians over treating physicians was appropriate where there was indication ALJ considered newer evidence before giving greater weight to opinion not based on review of complete case record).

Plaintiff further argues the ALJ could not give substantial weight to reviewing non-examining physicians to contradict the opinion of treating, examining physicians like Drs. Boone and Williams. Pl. Br. pp. 23-25. Plaintiff mistakenly relies on the Eleventh Circuit's decision in Johnson v. Barnhart, 138 F. App'x 266 (11th Cir. 2005), to support his claim. Id. at 24. In that case, the Court held an ALJ's RFC evaluation was "not dispositive, as its conclusions are from a non-treating, non-examining physician, and the other medical records express no indication of

[Plaintiff]'s ability to perform her past work." Id. at 271. Here, unlike in Johnson, the ALJ based his RFC evaluation not only on the opinions of Dr. Schiff and Dr. Culpepper, but also on Plaintiff's medical records and the Physical Work Performance Evaluation conducted by Ms. Hardeman and adopted by treating surgeon Dr. Bundy. R. 17-19. Therefore, because his decision was based on consistency with the entire medical record, the ALJ properly weighted non-examining state agency physicians Dr. Schiff's and Dr. Culpepper's opinions over treating and examining physicians Drs. Boone and Williams. As to Dr. Bundy, as previously explained, both he and the ALJ agreed with Ms. Hardeman's findings in the Physical Work Performance Evaluation.

In sum, the ALJ's weighing of the medical opinions is supported by substantial evidence.

**D.      The ALJ Properly Analyzed Plaintiff's Subjective Complaints.**

Plaintiff also argues the ALJ erred in assessing his credibility as it relates to his subjective complaints. Pl.'s Br., pp. 18-21. As set forth in the ALJ's opinion, Plaintiff testified he has constant back pain radiating to his left lower extremity. R. 17. Plaintiff further testified he has difficulty bending, is unable to kneel or crawl, and possibly needs help with self-care such as washing his feet. R. 18. He estimated he could walk for fifteen minutes, stand for fifteen minutes to an hour, and lift and carry up to ten pounds. Id.

**1.      The Standard for Evaluating Subjective Complaints**

The Eleventh Circuit has established a three-part standard for evaluating a claimant's subjective complaints. Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991). Under the Eleventh Circuit's standard, Plaintiff must show: (1) evidence of an underlying medical condition, and either (2) objective medical evidence that confirms the severity of the alleged symptoms or the restriction arising therefrom, or (3) that the objectively determined medical

condition is such that it can reasonably be expected to give rise to the claimed restriction. Id. When discrediting a claimant's subjective allegations of disabling symptoms, the ALJ must articulate "explicit and adequate" reasons for doing so, or "the implication must be so clear as to amount to a specific credibility finding." Foote v. Chater, 67 F.3d 1553, 1561-62 (11th Cir. 1995). Under the applicable regulations, the ALJ must consider "all evidence, including subjective statements about the intensity, persistence, and functionally limiting effects of pain [as well as] the objective medical evidence, laboratory findings and statements from treating or nontreating sources about how the symptoms affect the claimant in deciding the issue of disability." Jarrell v. Comm'r of Soc. Sec., 433 F. App'x 812, 814 (11th Cir. 2011) (citing 20 C.F.R. § 404.1529(c)(4)).

"Credibility determinations are, of course, for the [Commissioner], not the courts." Ryan v. Heckler, 762 F.2d 939, 942 (11th Cir. 1985). Moreover, this Court is required to uphold the Commissioner's credibility determination if it is supported by substantial evidence. Fortenberry v. Harris, 612 F.2d 947, 950 (5th Cir. 1980).[2] As the Eleventh Circuit explained:

> Although this circuit does not require an explicit finding as to credibility, . . . the implication must be obvious to the reviewing court. The credibility determination does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable [the district court or this Court] to conclude that [the ALJ] considered [the claimant's] medical condition as a whole.

Dyer v. Barnhart, 395 F.3d 1206, 1210-11 (11th Cir. 2005) (internal quotation marks and citations omitted). As explained below, the ALJ properly conducted the Holt analysis and reached the conclusion that Plaintiff's medically determinable impairments could possibly cause the alleged symptoms, but his subjective complaints concerning the intensity, persistence, and

---

[2]In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

limiting effects of the symptoms were not entirely credible.

### 2. The ALJ Thoroughly Discussed and Properly Discredited Plaintiff's Subjective Complaints.

Plaintiff argues, in considering his credibility, the ALJ failed to consider physical therapy records as a whole and failed to consider two objective test results indicating Plaintiff's abnormalities—(1) a November 2012 CT Scan and (2) the left leg EMG report dated February 22, 2013. Pl.'s Br., pp. 18-19. Plaintiff's claims are without merit.

Plaintiff's physical therapy records, combined with other recent imaging studies discussed above, do show some improvement. Although Plaintiff reported "little to no relief in pain since beginning PT" in December 2011 and "popping feeling in his back" in February and March 2012, he also repeatedly "tolerated [therapy] with minor [complaints of] pain," was discharged from therapy to a home exercise regimen, and in his first examination with Dr. Bundy after discharge showed "5/5 strength." R. 275, 334, 336, 338, 340, 342, 345. The ALJ also considered several progress notes from Augusta Orthopedic & Sports Medicine Specialists indicating "less episodes of falling" and "improved strength in [Plaintiff's] left lower extremity." R. 272, 275.

Furthermore, the ALJ considered several more recent imaging studies in his evaluation of Plaintiff's improvement. R. 18. He specifically noted that a January 3, 2013 imaging study "revealed maintained alignment of the interbody fusion at L4-5 and posterior leftward fusion at L5-S1." R. 18; see R. 468. He also considered a subsequent April 13, 2013 MRI indicating "posterior decompression at L5 with unilateral left posterior fusion at L5-S1 with placement of pedicle screws at these levels, interbody fusion at L4-5 and L5-S1, bilateral recess stenosis at L5-S1, and no focal compressive disc extrusion or sequestered disc fragment." R. 18; see R. 489.

Although the ALJ did not specifically mention the November 2012 CT Scan and the

February 2013 left leg EMG, he did engage in "careful consideration of the entire record. . . ." R. 17. An ALJ is "not required to refer specifically to each piece of evidence in the record"; he must only "sufficiently explain the weight given to 'obviously probative exhibits.'" See Cooper v. Comm'r of Soc. Sec., 521 F. App'x 803, 808 (11th Cir. 2013)) (citing Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981)). Here, because he stated he considered the entire record and weighed three separate probative exhibits, R. 18, the ALJ did not have to specifically analyze these two tests as Plaintiff contends. Id. at 808-09 ("the ALJ stated that he considered the record in its entirety, and he was not required to discuss every piece of evidence in denying her application for disability benefits"). Therefore, considering Plaintiff's physical therapy records and most recent imaging evidence as a whole led the ALJ to properly discredit Plaintiff's complaints.

The argument the ALJ improperly considered Plaintiff's smoking in his credibility determination also misses the mark. Plaintiff correctly cites Seals v. Barnhart, 308 F. Supp. 2d 1241, 1250 (N.D. Ala. 2004), for the proposition that continued smoking against the advice of a doctor does not *per se* disqualify a claimant from receiving disability benefits. Pl.'s Br., pp. 20-21. However, in Seals,

> [b]ecause of the ALJ's extensive discussion of the plaintiff's smoking; his citation to the regulation concerning failure to follow prescribed treatment; his extensive discussion of the plaintiff's smoking in his refusal to credit both the plaintiff's subjective testimony and that of her treating physician; it is clear that the plaintiff's failure to stop smoking was *central to the ALJ's finding that she was not disabled*.

Id. at 1248 (emphasis added).

In contrast, where it is not central to the ALJ's disability determination, courts have consistently held the refusal to follow multiple recommendations to stop smoke may be considered as part of a credibility assessment. See Mack v. Comm'r of Soc. Sec., 420 F. App'x

881, 882-83 (11th Cir. 2011) (affirming ALJ's credibility determination based in part on plaintiff's smoking five packs of cigarettes on daily basis); Taylor v. Comm'r of Soc. Sec., No. 615-CV-713-ORL-28TBS, 2016 WL 4385867, at *11 (M.D. Fla. June 14, 2016), *report and recommendation adopted*, No. 615-CV-713-ORL-28TBS, 2016 WL 4385847 (M.D. Fla. Aug. 15, 2016) ("Notably, this is not a case where the ALJ found the claimant not disabled due to noncompliance. The ALJ properly considered Plaintiff's continued smoking along with other evidence in discrediting her testimony and his findings are supported by substantial evidence."); Aderholt v. Astrue, No. 6:11-CV-00829-KOB, 2012 WL 2499164, at *10 (N.D. Ala. June 26, 2012) (approving ALJ's evaluation that "claimant's smoking two packs of cigarettes a day undermined his claim of insufficient funds to pay for medical services or medications").

Here, Plaintiff's smoking was not central to the ALJ's disability determination; it was only one factor in the ALJ's overall credibility determination. As discussed above, the ALJ reviewed a host of medical evidence and primarily based his determination on contradictory evidence in the record. Thus, the ALJ did not improperly consider Plaintiff's smoking, as it was only a small part of a much larger credibility determination. Although Plaintiff may disagree with the conclusion reached by the ALJ, the credibility determination is supported by substantial evidence.

## IV.    CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, this civil action be **CLOSED**, and a final

judgment be **ENTERED** in favor of the Commissioner.

SO REPORTED and RECOMMENDED this 2nd day of February, 2017, at Augusta, Georgia.


BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA